# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-IA-00321-SCT

**ISAAC K. BYRD, JR., KATRINA M. GIBBS, AND
BYRD, GIBBS & MARTIN, PLLC f/k/a BYRD &
ASSOCIATES, PLLC**

*v.*

**WILLIE J. BOWIE, INDIVIDUALLY, AND
CHARLES BROWN, INDIVIDUALLY, BEING THE
SOLE WRONGFUL DEATH BENEFICIARIES OF
LOIS BROWN, DECEASED**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/27/2005 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRECIOUS TYRONE MARTIN |
| ATTORNEYS FOR APPELLEES: | EDDIE JACOB ABDEEN |
| | STEPHEN LAMAR GOWAN |
| NATURE OF THE CASE: | CIVIL - LEGAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 04/06/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY

¶1. This interlocutory appeal stems from numerous motions, including a partial summary judgment, in a legal malpractice case which case arose after this Court handed down its opinion in the medical malpractice case *Bowie v. Montfort Jones Memorial Hospital*, 861 So. 2d 1037 (Miss. 2003). In *Bowie*, this Court affirmed summary judgment in favor of

Montfort Jones Memorial Hospital (Montfort). The trial court determined that the Plaintiffs, Bowie and Brown (collectively, "Bowie") failed to timely designate an expert for their medical malpractice claim; therefore, summary judgment was granted because Bowie could not make a prima facie medical malpractice case without this expert. *Id*. at 1043. The attorneys representing Bowie were Katrina M. Gibbs (Gibbs) and Isaac K. Byrd (Byrd).

¶2.     Following this Court's ruling in ***Bowie***, Bowie filed a legal malpractice case against Gibbs, Byrd, and Byrd, Gibbs and Martin, PLLC, f/k/a Byrd & Associates, PLLC (the "Firm")( collectively known as the "Defendants")  in the Circuit Court of Rankin County, Mississippi.  The first amended complaint was filed on April 29, 2004. [1]  On May 8, 2004, Gibbs was served with process.  On May 10, 2004, Christy Hall, Byrd's secretary, was served with process for Byrd and the Firm.[2]  On June 8, 2004, Gibbs, Byrd and the Firm filed a joint Answer.[3]

¶3.     On October 19, 2004, Bowie filed a motion for partial summary judgment claiming, inter alia, that the Defendants failed to respond to requests for admissions.  In response, the Defendants filed (1) a response to the motion for partial summary judgment, (2) a motion for disqualification of Attorney Eddie Abdeen (counsel for Bowie), (3) a motion to stay

---

[1]  The court papers do not indicate that an original complaint was ever filed in the trial court case.

[2]  Hall's first name has various spellings as "Christy" and "Kristie."  We will use "Christy" unless otherwise indicated in a quoted passage from the hearing transcript.

[3]  Counsel for Bowie granted the Defendants a 20 day extension.

proceedings, and (4) a motion to withdraw default responses to plaintiff's first set of requests for admissions.

¶4.     The trial court conducted a hearing on these four motions on January 4, 2005. Following this hearing the trial court granted the plaintiff's motion for partial summary judgment on the issue of negligence; denied the motion to stay; denied the motion to disqualify Abdeen; and denied the motion to withdraw default responses to plaintiff's first set of requests for admissions.  In the order, the trial court also granted certification for an interlocutory appeal on the rulings of the four motions.  This Court granted interlocutory appeal.  *See* M.R.A.P. 5.  The Defendants raise the following issues:

### ISSUES

I.      **Whether the Trial Court Erred by Granting Partial Summary Judgment on the Issue of Negligence and by Denying the Motion to Withdraw Default Responses to Request for Admissions.**

II.     **Whether the Trial Court Erred by Denying the Motion to Stay.**

III.    **Whether the Trial Court Erred by Denying the Motion to Disqualify Abdeen.**

### STANDARD OF REVIEW

¶5.     This Court reviews motions for summary judgment de novo. ***Brooks v. Roberts***, 882 So. 2d 229, 231-32 (Miss. 2004) (citing ***Bowie v. Montfort Jones Mem'l Hosp***., 861 So. 2d 1037, 1040 (Miss. 2003)). All evidence is to be viewed in the light most favorable to the non-moving party.  ***Id***. at 232. The decision of the trial court will only be reversed if "there are indeed triable issues of fact." ***Id***.

¶6.    Rule 56(c) of the Mississippi Rules of Civil Procedure provides that summary judgment shall be granted by a court if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact...." M.R.C.P. 56 (c); *see Saucier ex rel. Saucier v. Biloxi Reg'l Med. Ctr.*, 708 So. 2d 1351, 1354 (Miss. 1998). The moving party has the burden of demonstrating there is no genuine issue of material fact, while the non-moving party should be given the benefit of every reasonable doubt. *Tucker v. Hinds County*, 558 So. 2d 869, 872 (Miss. 1990). *See also Heigle v. Heigle*, 771 So. 2d 341, 345 (Miss. 2000). A fact is material if it "tends to resolve any of the issues properly raised by the parties." *Palmer v. Anderson Infirmary Benevolent Ass'n*, 656 So. 2d 790, 794 (Miss. 1995).

¶7.    "If, in this view, there is no genuine issue of material fact and, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied." *Williamson ex rel. Williamson v. Keith*, 786 So. 2d 390, 393 (Miss. 2001). "Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite." *Tucker*, 558 So. 2d at 872.

> Of importance here is the language of the rule authorizing summary judgment 'where there is no genuine issue of *material* fact.' The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense . . . the existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact.

4

*Simmons v. Thompson Mach. of Miss., Inc.*, 631 So. 2d 798, 801 (Miss. 1994)(citing *Shaw v. Burchfield*, 481 So. 2d 247, 252 (Miss. 1985)).  The evidence must be viewed in the light most favorable to the non-moving party.  *See Richmond v. Benchmark Constr. Corp.*, 692 So. 2d 60, 61 (Miss. 1997); *Russell v. Orr*, 700 So. 2d 619, 622 (Miss. 1997); *Northern Elec. Co. v. Phillips*, 660 So. 2d 1278, 1281 (Miss. 1995); *Simmons,* 631 So. 2d at 802; *Tucker*, 558 So. 2d at 872.

¶8.     To avoid summary judgment, the non-moving party must establish a genuine issue of material fact within the means allowable under the Rule.  *Richmond*, 692 So. 2d at 61 (citing *Lyle v. Mladinich,* 584 So. 2d 397, 398 (Miss. 1991)).  "If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise the decision is affirmed."  *Richmond*, 692 So. 2d at 61.

### DISCUSSION

**I.      Partial Summary Judgment and Motion to Withdraw Responses to Requests for Admissions**

      **A.      Service of Requests for Admissions**

¶9.     The trial court granted summary judgment in favor of Bowie on the issue of liability. The trial court found the Defendants were served with process concerning  the request for admissions and denied the motion to set aside admissions.  The trial court stated:

> [I]t appears to the Court that they were served  – Byrd – Byrd law firm and Katrina Gibbs were served.  No response was filed.  I understand what you say Mr. Martin [counsel for the Defendants], about why would I file an answer and not file a motions responses [sic].  I've seen it happen a lot of times.  With – Maybe they were overlooked, I don't know.  But it does show a pattern, I

5

think. The plaintiff's Motion for Partial Summary Judgment will be granted as to the negligence issue but denied as to the monetary value . . . .

¶10. The Defendants argue the trial court erred by denying the motion to withdraw default responses to requests for admissions. The Defendants argue they never received the request for admissions. Gibbs, Byrd and Precious Martin (Martin), counsel for Gibbs, Byrd and the Firm, all gave affidavits stating they never received any requests for admissions.

¶11. The trial court papers contain preprinted summonses. The summonses state, in part:

> Notice is also hereby given of service of Plaintiffs' First Requests for Production of Documents Propounded to Defendant and responses must be mailed or delivered within forty-five (45) days from the date of delivery of this summons and discovery.

The summonses for Gibbs and Byrd also had the words "First Set of Interrogatories & Requests for Admissions" handwritten around the notice paragraph. The Defendants claim they did not know about the request for admissions until Bowie filed the motion for partial summary judgment.

¶12. However, during the hearing, a number of witnesses testified about the issue of receipt of the requests for admissions. Gary Windham, the process server, stated that he served Gibbs personally, and served Christy Hall, Byrd's secretary. On cross-examination, Windham could not identify who hand wrote the words "First Set of Interrogatories & Requests for Admissions" on the summonses. He also did not know whether those words were on the summonses at the time he served the summonses. Later, he stated that he served whatever was written on the returns. The preprinted proofs of service signed by Windham

6

showed that the summonses, amended complaint, interrogatories and requests for admissions were served. The proofs of service were completely typed, unlike the summonses. There was no handwritten addition concerning the requests for admissions on the returns.

¶13.    Suzanne Keys, an attorney that worked for the Firm, testified she was unfamiliar with the case, but did participate in communications regarding it, as evidenced by emails between attorney Abdeen and herself. One of the e-mails, dated May 13, 2004, from Abdeen, contained attachments which included the requests for admissions, which were also discussed in the text of the email. Moreover, Keys stated that she received the May 13, 2004, e-mail, although she claims she did not open any of the attachments. In an email dated May 27, 2004, Keys asked Abdeen, per Gibbs request, for an extension to file an answer. In an email dated May 28, 2004, Abdeen confirmed a telephone conversation between Keys and Abdeen regarding an agreement to grant an extension to file a responsive pleading and responses to discovery:

> This email will confirm the discussion we just had wherein I agreed that Katrina Gibbs, Mr. Byrd, and the Byrd firm can have an additional 20 days to serve a responsive pleading in the referenced case. The responses to the discovery served with the complaint will be served at the same time the answers will be due.

At the hearing on Bowie's motion for partial summary judgment, Keys admitted to receiving this email.

¶14.    The trial court held an evidentiary hearing pursuant to the Defendant's motion to withdraw default responses pursuant to M.R.C.P. 36(b). The record reflects that the agent's

7

process returns showed service of process. Furthermore, the correspondence between Keys and Abdeen reflects notice to the Defendants. The Defendants' meager proof or reasons given to the trial court for their failure to respond to Bowie's request for admissions were soundly rejected. The evidence submitted to the trial judge was reasonable and certainly not manifestly wrong under the applicable standard of review. *See Punzo v. Jackson County*, 861 So. 2d 340, 343 (Miss. 2003). This Court is thus duly bound to respect the lower court's findings of fact when they are supported by reasonable evidence in the record and are not manifestly wrong. *See Allied Steel Corp. v. Cooper*, 607 So. 2d 113, 119 (Miss. 1992). Here, the trial judge did not abuse his discretion, and the evidence reasonably supports the grant of summary judgment on the issue the defendants' negligence based on the defendants' failure to respond to plaintiff's request for admissions.

## B. Negligence as a Matter of Law

¶15. Notwithstanding the defendants' failure to properly respond to Bowie's request for admissions, we find the defendants were negligent as a matter of law. As the defendants correctly assert in their brief, to prevail, one claiming negligence in a legal malpractice action must prove by a preponderance of the evidence (1) the existence of an attorney-client relationship, (2) negligence on the part of the lawyer in handling his client's affairs entrusted to him, and (3) proximate cause of the injury. *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So. 2d 1205, 1215 (Miss. 1996); *Hickox v. Holleman*, 502 So. 2d 626, 633 (Miss. 1987) (superseded on other grounds). Moreover, "[c]learly established law provides that expert

testimony is necessary to establish the breach of a duty of care in a claim of legal malpractice." ***Lane v. Oustalet***, 873 So. 2d 92, 99 (Miss 2004); ***Hickox v. Holleman***, 502 So. 2d at 635; ***Dean v. Conn***, 419 So. 2d 148, 150 (Miss. 1982).

¶16.    However, this Court has carved out some exceptions to the general rule that expert testimony is required in a legal malpractice claim.  Applicable to the case at bar is the exception found in ***Hickox***, 502 So. 2d at 635.  There, this Court held an expert is not required "when the attorney's conduct is negligent as a matter of law and the plaintiff is entitled to a directed verdict on liability."  ***Id***.  In ***Hickox***, this Court held the attorney's failure to file suit prior to the expiration of the statute of limitations constituted negligence as a matter of law, where the attorney admitted he never performed research to determine the nature of Hickox's claim. ***Id***. at 636.  *See also* ***Thompson v. Erving's Hatcheries, Inc.***, 186 So. 2d 756, 759 (Miss. 1966).

¶17.    In discussing the need for experts for legal malpractice actions, we stated:

> Moreover, attorneys involved in malpractice actions must always remember there is a pragmatic difference between the trial of other professional malpractice cases and a legal malpractice case.  In the former class, the lawyers and judges are laymen.  In professional malpractice cases, excepting extreme cases, we rely upon experts for guidance.  The attorney who finds himself the defendant in a legal malpractice case, however, has a judge and the trial attorneys who are already experts.

***Hickox***, 502 So. 2d at 636.  Furthermore, "[i]t does not require expert testimony to establish the negligence of an attorney who is ignorant of the applicable statute of limitations or who

9

sits idly by and causes the client to lose the value of his claim for relief." *Id*. (quoting *George v. Caton*, 93 N.M. 370, 600 P.2d 822, 829 (N.M. Ct. App. 1979)).

¶18.   In this case, the question becomes whether Bowie's claim of legal malpractice calls for expert testimony in order to establish that the Defendants breached their duty of care.  In *Bowie*, the Defendants neither timely filed a designation of an expert, nor provided any excuse as to why they did not timely file the designation.  *Bowie*, 861 So. 2d at 1042.  We find the facts in this case are analogous to the facts in *Hickox*.  An attorney who fails to designate an expert by a court-mandated deadline and does not provide any reason for doing so, is negligent as a matter of law, as was the attorney in *Hickox*.  Therefore, Bowie is entitled to partial summary judgment as to the Defendants' liability.

## II.    Motion to Stay

¶19.   The Defendants argue the trial court erred by denying a motion to stay.  The Defendants' legal malpractice insurance carrier is American National Lawyers Insurance Reciprocal (ANLIR).  On June 3, 2004, ANLIR was placed into liquidation by the Chancery Court of Davidson County, Tennessee.  Following the proceeding in Tennessee, the Defendants filed a motion for stay with the trial court citing that the legal malpractice suit (1) should be stayed until ANLIR's assets are distributed; and (2) no discovery and prosecution of the claim should go forward because the Defendants would not be in a position to defend themselves which would result in undue prejudice.

10

¶20.    The Defendants argue Bowie's suit would have a direct and substantial adverse effect on the insurance company's ability to undergo a successful liquidation.   Defendants rely on *Arnold v. Garlock, Inc.,* 278 F.3d 426, 434 (5th Cir. 2001), for the premise that proceedings that "relate to" a bankruptcy action include civil suits between third parties which have an effect on the bankruptcy estate.   There is  "related to" subject matter jurisdiction when the outcome of a proceeding between two non-debtors may impact the debtor's bankruptcy estate.  *Id*. at 441.

¶21.    However, Bowie asserts that the Defendants erroneously argue a "related to" jurisdiction provision of the United States Bankruptcy Code, 28 U.S.C. Section 1334, for the first time on appeal.  Nevertheless, Bowie argues that domestic insurers are not capable of being a "debtor" under the bankruptcy code 11 U.S.C. Section 109(b), but rather their insolvency is based on state law.  *In re Advanced Cellular Systems*, 235 B.R. 713, 717-18 (Bankr. D. Puerto Rico 1999).

¶22.    Bowie also argues that  ANLIR's Tennessee court order does not provided for a stay of litigation against its policy holders**.**  Also, Miss. Code Ann. Section 83-23-135 provides a six month stay for the Mississippi Insurance Guaranty Association (MIGA)  in order to provide a defense to a covered claim within the meaning of the code section.   However, Bowie contends this provision is not applicable because ANLIR policy holders are not covered or protected under MIGA.   Bowie provided an affidavit of John Weeks, the executive director of MIGA which stated in part:

11

I hereby certify that, according to the Mississippi Insurance Department, American National Lawyers Insurance Reciprocal (ANLIR), which provided legal liability and malpractice insurance for certain attorneys in the State of Mississippi was not licensed with that Department to do business in the State on or about February 11, 2003. I further certify that, according to the Mississippi Code, **ANLIR policyholders are not covered and/or protected under the Mississippi Insurance Guaranty Association.**

(emphasis added).

¶23.    The trial court ruled:

Okay. Motion to Stay will be denied. The Court in Tennessee is not a Federal Bankruptcy Court where proceedings are automatically stayed. It's a Chancery Court of Tennessee, where the receivership – the insurance company A-N-L-I-R, is not covered under Section § 83-23-135 of the Mississippi Code and not part of that association of insurers. The Court in Tennessee is really of no consequence in the outcome of this lawsuit. The only way they could be is if they provide a defense. But if they could provide a defense, they've got funds to do that; they could also reimburse the defendants for any money expended on counts which is basically the same thing. They just don't get to choose who they pay the money to. The Motion to Stay is denied.

¶24.    We find the trial court did not abuse its discretion by denying the motion to stay. *See Herrington v. Leaf River Forest Products, Inc.*, 733 So. 2d 744, 776 (Miss 1999). The liability insurance firm, ANLIR, is not protected by Mississippi law. In addition, no automatic stay is provided to any policy holders of ANLIR. As such, we find the trial court correctly ruled to deny the motion to stay.

**III.    Motion to Disqualify**

¶25.    In *Colson v. Johnson*, 764 So. 2d 438, 439 (Miss. 2000), this Court ruled on a motion to disqualify an attorney and held:

12

> Little case law exists in Mississippi with regard to the standard of review of a trial court's decision of a motion to disqualify an attorney. In ***Quick Change Oil & Lubrication Co. v. County Line Place, Inc***. 571 So. 2d 968, 970 (Miss.1990), we held that manifest error applies only to review of findings of fact and that the court has broad discretion.

¶26.    The Defendants filed a motion to disqualify Abdeen, the attorney of record for Bowie and Brown, in the legal malpractice case. The basis of the motion was that Abdeen stated in an affidavit that he had personal knowledge of the facts in the case. Therefore, the Defendants argue that Abdeen may be called as a witness at trial.[4] The actual affidavit states in part:

1.    My name is Eddie J. Abdeen and I have personal knowledge of the facts set forth herein. I am one of the attorneys of record in this matter.
2.    I hereby certify that the attached e-mails are true and correct copies of the emails [sic] referred to as composite Exhibit "E" in Plaintiffs' Motion for Partial Summary Judgment in the captioned case.

The Defendants also cite to the transcript of the hearing conducted on January 4, 2005. Specifically, they cite to the direct and cross-examination of Keys, an attorney and employee at the Firm. The e-mails mentioned in Abdeen's affidavit were between him and Keys over a period of a few weeks. During the hearing, Abdeen questioned Keys about the content and circumstances which prompted the sending of the e-mails.

¶27.    Bowie contends the affidavit merely stated that Abdeen had personal knowledge of the facts set forth in the affidavit and authenticated the e-mails between Abdeen and Key.

---

[4] The Defendants also claim that Abdeen may have personal knowledge of the case outside his scope as an attorney. However, the Defendants offer no proof of this assertion, and, therefore, this Court has no evidence to address this claim.

13

Bowie also argues that Abdeen had no knowledge of the underlying facts of the case itself. The trial court denied the Defendants' motion to disqualify Abdeen.

¶28. We find the record is clear that Abdeen had no knowledge of the underlying case. He merely had an e-mail exchange with an employee of the Firm, Keys, which occurred after Gibbs, Byrd, and the Firm were served with process. Abdeen had no personal knowledge of the underlying *Bowie* case which led to the filing of a legal malpractice case against the Defendants. Accordingly, we find that the trial court did not err by denying the Defendants' motion to disqualify Abdeen.

## CONCLUSION

¶29. For the reasons stated above, we find the trial court was correct in its rulings and affirm the trial court in toto.

¶30. **AFFIRMED**.

**WALLER, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J. COBB, P.J., AND DIAZ, J., NOT PARTICIPATING.**

**EASLEY, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶31. I agree with the majority's opinion to affirm the trial court findings to deny the motion to stay and the motion to disqualify. However, I disagree with the majority's decision to affirm the trial court on the issue of granting partial summary judgment in Bowie's favor. I believe there is a genuine issue of material fact concerning whether the defendants received

14

Bowie's First Set of Requests for Admissions. I also strongly disagree with the trial court and this Court's failure to consider the sworn affidavits of the defendants, Gibbs and Byrd, and their counsel, Martin. The affidavits state that none of them received the requests for admissions. I find it astonishing and disappointing that the trial court, and the majority of this Court by way of affirmance, completely disregarded the sworn affidavits of the Defendants and their counsel, all officers of the court. The failure to consider these affidavits sends a message to all lawyers that their sworn affidavits are untrustworthy and have no credibility in a court of law. For these reasons, I must concur in part and dissent in part with the majority's opinion today.

¶32. Here, the trial court granted summary judgment in favor of Bowie on the issue of liability; found the Defendants were served the request for admissions; and denied the motion to set aside admissions. At the hearing the trial court stated:

> [I]t appears to the Court that they were served – Byrd – Byrd law firm and Katrina Gibbs were served. No response was filed. I understand what you say Mr. Martin [counsel for the Defendants], about why would I file an answer and not file a motions responses [sic]. I've seen it happen a lot of times. With – Maybe they were overlooked, I don't know. But it does show a pattern, I think. The plaintiff's Motion for Partial Summary Judgment will be granted as to the negligence issue but denied as to the monetary value . . . .

A. **Service of Requests for Admissions**

¶33. The main issue is whether the Defendants were served with process on the Request for Admissions. **Of significance, Gibbs, Byrd, and Precious Martin (Martin), counsel**

15

**for Gibbs, Byrd, and the Firm, all gave affidavits stating that they <u>never received</u> any requests for admissions.**

¶34.   The trial court papers contain preprinted summonses which stated that the Defendants had notice and service of the Plaintiffs' First Requests for Production of Documents Propounded to Defendant.  Gibbs and Byrd also received summonses with a *handwritten notation* stating "First Set of Interrogatories & Requests for Admissions" near the notice paragraph.  However, the Defendants argue that they had no knowledge of the request for admissions until Bowie filed the motion for partial summary judgment.

¶35.   During the hearing, Windham, the process server, stated that he served Gibbs personally, and served Christy Hall, Byrd's secretary.  He could not identify who hand wrote the words "First Set of Interrogatories & Requests for Admissions" on the summonses**.  Of significance, Windham did not know if those words were on the summonses at the time he served them**.  Despite this testimony, Windham claimed that he served whatever was written on the returns.  Windham also signed preprinted proofs of service that indicated service of the summonses, amended complaint, interrogatories and requests for admissions.  These proofs of service were completely typed, unlike the summonses, which had the handwritten notations concerning the requests for admissions on the returns.

¶36.   Keys testified regarding a number of e-mails between Attorney Abdeen and her.  One of the e-mails, dated May 13, 2004, from Abdeen contained attachments which included the requests for admissions.  Keys stated that she received the May 13, 2004, e-mail.  **However,**

16

**Keys stated that she did not open any attachments.** Also, Keys's e-mails to Abdeen do not reference any admissions. She stated that she was unfamiliar with the case. Keys also stated that Gibbs solely requested that she seek an extension from Abdeen to file their answer. Keys stated that she merely attempted to get an extension for filing an answer in the case. Keys testified that she was not the registered agent for the Firm and not authorized to speak on behalf of the Firm.

¶37.    Bowie argues that the Defendants were not entitled to relief pursuant to M.R.C.P. 36 because they never presented a justifiable excuse for failing to respond to the requests for admissions. Bowie relied on *Earwood v. Reeves*, 798 So. 2d 508, 517 (Miss. 2001), for authority. The Defendants argue that they had no knowledge of the requests for admissions until the motion for partial summary judgment was filed by Bowie. Thereafter, the Defendants immediately filed a motion to withdraw the requests for admissions. As previously mentioned, Gibbs, Byrd, and Martin all gave affidavits stating that none of them were served with any discovery including any requests for admissions.

¶38.    In *Earwood*, Reeves filed a complaint against Earwood and his law firm. *Id*. at 514. Instead of filing an answer and responding to requests to discovery, Earwood filed a motion to transfer for change of venue to another county. *Id*. Earwood and the firm argued that they believed in good faith that the filing of the motion to transfer tolled the time limit for responding. *Id*. at 515. This Court found no abuse of discretion by the trial court and affirmed the grant of partial summary judgment. *Id*. at 516.

¶39. Here, the facts are distinguishable from *Earwood*. The Defendants claim that they never received the request for admissions and signed affidavits to that effect. The Defendants and their counsel are all officers of the court and have an obligation to the court to be truthful. Once Bowie filed the motion for partial summary, the Defendants immediately filed a motion to withdraw default responses. *Earwood* cites two other cases, *Martin v. Simmons*, 571 So. 2d 254 (Miss. 1990) and *Sunbelt Royalty, Inc. v. Big-G Drilling Co.*, 592 So. 2d 1011 (Miss. 1992), for examples of cases in which this Court upheld a trial court decision which deemed unanswered requests for admission to be admitted. *Earwood*, 798 at 517. However, these cases are also distinguishable because the defendants these two cases had no counsel, and the Defendants here gave signed affidavits that they never received the requests for admissions.

¶40. The trial court ruling clearly referenced and relied on the Defendants's failure to answer the request for admissions to grant partial summary judgment in favor of Bowie. However, there is a genuine issue of material fact, that being, whether Gibbs and Byrd were actually served with the requests for admissions. The testimony from Windham indicates that he does not know what he served on Gibbs and Byrd's secretary, Hall. Windham also does not know whether the words "First Set of Interrogatories & Requests for Admissions" were written on the summonses at the time he served them on the Defendants. Keys stated that she knew nothing about the case and never opened any attachments from Abdeen. In

addition, Gibbs, Byrd, and their counsel, Martin, as officers of the court, all gave sworn affidavits that they never received any requests for admissions.

¶41.   The majority states that the trial court soundly rejected the Defendants "meager proof" and reasons for the their failure to respond to the request for admissions.  However, I find it worrisome that by affirming the trial court ruling, this Court is endorsing the complete refusal of the trial court to consider the submission of sworn affidavits from lawyers, who are officers of the court.

¶42.   Accordingly, I believe that the trial court erred by granting Bowie's motion for partial summary judgment.  There exists a genuine issue of material fact, that being, whether Gibbs and Byrd ever received the request for admissions.  Based upon the cloud surrounding service of process of the requests for admissions, the grant of partial summary judgment should be reversed, and the case should be remanded to the trial court.

## B.   *Negligence - Bowie*

¶43.   Bowie asserts a collateral estoppel argument on the issue of liability claiming that *Bowie* established that the Defendants breached their legal duty of care as a matter of law. Bowie claims that if the Defendants are allowed to withdraw the admissions he would suffer additional delay, expenses, and effort.

¶44.   This Court in *Bowie* affirmed a trial court ruling to grant summary judgment because the plaintiffs failed to timely designate an expert in a medical malpractice case. *Bowie*, 861 So. 2d at 1043. "The trial judge made a specific finding that the plaintiffs had failed to show

19

*any* excusable neglect as to why the designation of the expert was not timely filed." *Id*. at 1042. Contrary to Bowie's assertions, this Court made no actual finding of legal malpractice in *Bowie*. Therefore, I believe that this issue is without merit.

¶45. For the foregoing reasons, I respectfully concur in part and dissent in part with the majority opinion.

**GRAVES, J., JOINS THIS OPINION.**