William H. PEARSON, Sheila M. Pearson, Cass M. Pearson and William H. Pearson, as Father, Natural Guardian and Next Friend of Cass Miles Pearson, Plaintiffs,

v.

SINGING RIVER MEDICAL CENTER, INC., Ocean Springs Hospital, Singing River Hospital, Inc. d/b/a Ocean Springs Hospital, Dr. E.H. Mitchell, Jr., Company Defendant Does 1 Through 5, Assisting Physicians Does 6 Through 10, Rebecca Bell, R.N., C. Keiper, R.N., and Norma Miller, R.N., Defendants.

Civ. A. No. S90–0255(R).

United States District Court,
S.D. Mississippi, S.D.

March 1, 1991.

Mitchell H. Tyner and William Roberts Wilson, Jr., Jackson, Miss., for plaintiffs.

Joe Colingo and James H. Heidelberg, Pascagoula, Miss., for defendants.

MEMORANDUM ORDER

DAN M. RUSSELL, Jr., District Judge.

This cause is before this Court on Motion of the plaintiffs, William H. Pearson, Sheila M. Pearson, Cass M. Pearson, and William H. Pearson, Natural Guardian and Next Friend of Cass Miles Pearson (hereinafter "Pearson plaintiffs") to Recuse Defendants' Counsel and Law Firm. Said Motion was filed on October 5, 1990.

In their Motion to Recuse, the Pearson plaintiffs contend the following:

1. that David B. Strain, a partner in the law firm of Bryant, Colingo, Williams & Clark, has been representing Bill Pearson, a plaintiff in this action, for approximately two (2) years in another action; specifically, one in the Circuit Court of Jackson County, Mississippi, styled *Bill Pearson v. Carol Koplin d/b/a Goofy Golf and Betty Trammell*, Cause No. 89–5312(2) (hereinafter referred to as the "Goofy Golf" action);

2. that James Heidelberg, who is also a partner of the law firm of Bryant, Colingo, Williams & Clark, is representing the Singing River Hospital Systems, a defendant in this action, who is an adverse party to Bill Pearson in same; and

3. that Joe Colingo, also a partner in the law firm of Bryant, Colingo, Williams & Clark, represents Dr. E.H. Mitchell, Jr., a defendant in this action whose interests are adverse to those of plaintiff William H. Pearson.

The plaintiffs contend that because the law firm Bryant, Colingo, Williams & Clark represents the defendants in this cause via James Heidelberg and Joe Colingo, and also represents the plaintiff William H.

Pearson herein in another matter via David Strain, that said firm and counsel should be recused.

The response of the defendant, Dr. E.H. Mitchell, Jr. (hereinafter defendant "Mitchell"), reflects that counsel for said defendant, Joe Colingo, learned secondhandedly on or about October 1, 1990, of a potential conflict of interest between his firm representing defendants in this matter against plaintiff William H. Pearson, and one of his partners simultaneously representing William H. Pearson as a plaintiff in another matter. Joe Colingo submits he neither had knowledge prior to said week of October 1, 1990, of a potential conflict whereby David Strain of his firm represented plaintiff William H. Pearson on a medical malpractice claim against a Goofy Golf defendant in Biloxi, Mississippi, nor notice that there were only objections filed by any of the Pearson plaintiffs to any potential conflict.

The defendant Mitchell also submits by exhibits that any potential conflict has been removed since David Strain, counsel for plaintiff William H. Pearson in the Goofy Golf cause, filed a Motion to Withdraw from said case on October 4, 1990, and was allowed to withdraw by Order of the Circuit Court of Jackson County on October 11, 1990.

The Pearson plaintiffs primarily cite the Court to Rule 1.7 of the Mississippi Rules of Professional Conduct which provides:

Rule 1.7 Conflict of Interest: General Rule

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless the lawyer reasonably believes:

(1) the representation will not adversely affect the relationship with the other client; and

(2) each client has given knowing and informed consent after consultation. The consultation shall include explanation of the implications of the adverse representation and the advantages and risks involved.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless the lawyer reasonably believes:

(1) the representation will not be adversely affected; and

(2) the client has given knowing and informed consent after consultation. The consultation shall include explanation of the implications of the representation and the advantages and risks involved.

Rule 1.7 deals with the essential element of loyalty involved in the lawyer's relationship to a client. However, Rule 1.7 and the authorities cited by the Pearson plaintiffs in their brief now are not solely determinative of the issue before the Court since David Strain has withdrawn as counsel for the plaintiff William H. Pearson in the Goofy Golf action. Now it is also appropriate that the Court focus its attention on the ethical guidelines surrounding the conflicts of interest as to a former client.

Rule 1.9 of the Mississippi Rules of Professional Conduct provides:

Rule 1.9 Conflict of Interest: Former Client

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

As explained in the Mississippi State Bar Comments to said Rule, "[a]fter the termination of a client-lawyer relationship, a lawyer may not represent another client except in conformity with this Rule. The principles in Rule 1.7 determine whether the interests of the present and former client are adverse." The comments further pro-

vide that the scope of the "matter" for purposes of Rule 1.9(a) may depend on the facts of a particular situation or transaction, and that the lawyer's involvement in a matter can also be a question of degree. Direct involvement by a lawyer in a specific transaction would prohibit subsequent representation of other clients with materially adverse interests. However, said comments also provide that a lawyer who "recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client.... The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question."

Finally, Rule 1.10 bars any of the lawyers who are associated in a firm from knowingly representing a client when any one of them practicing alone would be prohibited from doing so in Rule 1.9. Rule 1.10 provides, in pertinent part:

Rule 1.10 Imputed Disqualification: General Rule

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2

(b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter.

. . . .

(d) A disqualification prescribed by this Rule may be waived by the affected client under the conditions stated in Rule 1.7.

The ABA Model Disciplinary Rules are also applicable. DR 5–105(D) provides: "If a lawyer is required to decline employment under a Disciplinary Rule, no partner, associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment." Even more generally, DR 1–102(A)(2) forbids a lawyer to "[c]ircumvent a Disciplinary Rule through the actions of another."

Most courts have employed a substantial relationship test to analyze the propriety of successive representation. *E.g., Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715 (7th Cir.1982). The United States Court of Appeals for the Fifth Circuit addressed the guidelines and applicable burden of proof governing an attorney's representation of an interest adverse to that of a former client in *Duncan v. Merrill, Lynch, Pierce, Fenner & Smith,* 646 F.2d 1020, 1029 (5th Cir. Unit B June 1, 1981), *cert. denied,* 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981). The court held that in a disqualification case the district court should scrutinize "the precise nature of the relationship between the present and former representation." *Id.* Further, the court stated:

Thus, to disqualify his former counsel, the moving party must prove not only the existence of prior attorney-client relationship but also that there is a genuine threat that confidences revealed to his former counsel will be divulged to his present adversary. The party seeking disqualification is not required, however, to point to specific confidences revealed to his former attorney that are relevant to the pending case. Instead, he 'need only to show that the matters embraced within the pending suit are substantially related to the matters or cause of action wherein the attorney previously represented him.' *Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.,* 559 F.2d 250, 252 (5th Cir.1977); *In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 89 (5th Cir.1976); *T.C. Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265, 268 (S.D.N.Y.1953). Once the former client proves that the subject matters of the present and prior

representations are 'substantially related,' the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation. *Id.*

*Id.* (emphasis in original).

In *Johnston v. Harris County Flood Control District,* 869 F.2d 1565, 1569 (5th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990), the Fifth Circuit set forth a two part test for a disqualification of the type in issue:

A party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: 1.) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and 2.) a substantial relationship between the subject matter of the former and present representations. *In re Corrugated Container Antitrust Litigation,* 659 F.2d 1341, 1345 (5th Cir. Unit A 1981); *Duncan,* 646 F.2d at 1028.

 The Pearson plaintiffs have met the first part of this test and the plaintiff William H. Pearson has sufficient standing to bring the Motion to Recuse, or rather to disqualify. However, the Court cannot find a substantial relationship exists between the subject matter of the former and present representations. There is no evidence before the Court to support a presumption that any confidential disclosures in the former representation of the plaintiff William H. Pearson by David Strain were made, or that such information would be used adversely to William H. Pearson in behalf of the defendant Mitchell, or for that matter, defendant Singing River Hospital System.

The Court would first note the Pearson plaintiffs' own statement in their brief in support of their Motion to Recuse that the matter in the instant suit, for which Wilson Roberts' services were retained, is *"unrelated"* to the Goofy Golf suit.

Furthermore, the Affidavit of David B. Strain (hereinafter "Strain"), dated October 10, 1990, reflects that before he received a call from his law partner Joe Colingo on October 2, 1990, inquiring as to whether he represented in any way the plaintiff William H. Pearson, Strain was completely unaware that William H. Pearson was involved in any other litigation other than his suit against Goofy Golf.

Strain immediately began a Motion to Withdraw; however, he learned on October 4, 1990, that the Pearson plaintiffs had filed the Motion for Recusal in this cause. As previously stated, Strain did file a motion and was allowed to withdraw by Order of the Circuit Court of Jackson County on October 11, 1990.

More importantly, Strain states in his affidavit that he has no memory of any conversation with William H. Pearson about any claims or potential claims against any hospitals or physicians and that he does not believe one occurred. He has also stated that he has no knowledge about such a claim except that derived from what he read in the Motion to Recuse in issue. Finally, Strain states that during the last four to eight weeks of his representation of William H. Pearson, and while he was completely ignorant of any potential conflict, he made numerous attempts to contact William H. Pearson in Mobile, Alabama, and left numerous messages in an effort to secure documentation necessary to respond to discovery in his suit against Goofy Golf. He submits all these efforts went unrewarded. Strain states that at no time prior to the filing of the Motion to Recuse did William H. Pearson ever raise the issue of a conflict of interest concerning the firm or him.

The Pearson plaintiffs have failed to show that the matters embraced within this pending suit are substantially related to the matter or cause of action in the Goofy Golf suit wherein Strain of Bryant, Colingo, Williams and Clark previously represented him, and as such that relevant confidential information was disclosed during the former period of representation.

THEREFORE, IT IS ORDERED AND ADJUDGED that the Motion of the plaintiffs William H. Pearson, Sheila M. Pearson, Cass M. Pearson, and William H. Pearson, Natural Guardian and Next Friend of

Cass Miles Pearson to Recuse Defendants' Counsel and Law Firm is hereby DENIED.

SO ORDERED AND ADJUDGED.